UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| OFF-WHITE LLC,<br><br>         *Plaintiff*,<br><br>   v.<br><br>PAIGE, LLC F/K/A PREMIUM DENIM, LLC,<br><br>         *Defendant*. | Case No. 1:17-cv-2904 |

**DEFENDANT PAIGE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      THERE IS NO DISPUTE ABOUT OFF-WHITE'S USE OF ITS MARKS ......................1

II.     FACTUAL BACKGROUND ........................................................................................3

III.    CLAIM I MUST BE DISMISSED; THERE IS NO CASE OR CONTROVERSY ..........7

     A.      If a Case or Controversy Ever Existed (and it Did Not), it Was Eliminated
         by Paige's Covenant Not to Sue ...................................................................8

     B.      No Case or Controversy Ever Existed In the First Place ......................................10

         1.      There Is No Case or Controversy Regarding the Vertical Stripe
             Mark ..........................................................................................10

         2.      There Is No Case or Controversy Regarding the Square Stripe
             Mark or the Horizontal Stripe Mark ...........................................13

     C.      The Possibility that Paige May Object to Future Uses of Plaintiff's Marks
         Does Not Create a Justiciable Case or Controversy .............................................14

IV.     CLAIM II MUST BE DISMISSED; THERE IS NO FEDERAL JURISDICTION
     OVER CANCELLATION WHERE THERE IS NO ISSUE OF
     INFRINGEMENT ......................................................................................................15

V.      PLAINTIFF'S REQUEST FOR A DECLARATION REGARDING ITS
     REGISTRATIONS AND APPLICATIONS SHOULD BE STRICKEN ........................16

VI.     CONCLUSION ........................................................................................................18

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
   300 U.S. 227, 240-41 57 S.Ct. 461, 81 L.Ed. 617 (2001)....................................................2, 14

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
   172 F.3d 852, 854-55 (Fed. Cir. 1999) ...........................................................................8, 9, 15

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340, 1346-49 (Fed. Cir. 2007) ................................................................................8

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
   No. 09 CIV 7352 JGK, 2010 WL 3629592, *3, *5 (S.D.N.Y. Sept. 16, 2010).....12, 13, 14, 15

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871, 881 (Fed. Cir. 2008)................................................................................14, 15

*Classic Liquor Importers, Ltd. v. Spirits Int'l B.V*
   151 F. Supp. 3d 451, 457-58 (S.D.N.Y. 2015) ........................................................10, 12, 17

*Crossbow Technology, Inc. v. YH Technology*,
   No. C03–4360SI, 2007 WL 2408879, *4-*5 (N.D.Cal. Aug.21, 2007)..................................8

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
   1998 WL 766703, *12, 48 U.S.P.Q.2d 1385 (W.D. Wis. 1998) ....................................16, 17

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
   312 U.S. 270, 273 61 S.Ct. 510, 85 L.Ed. 826 (1941)............................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118, 126-27, 127 S.Ct. 764, 166 L.Ed. 604 (2007).............................................7, 14

*National Cable Television v. American Cinema*,
   937 F.2d 1572, 1581 (Fed. Cir. 1991)....................................................................................12

*Nike, Inc. v. Already, LLC*,
   663 F.3d 89, 94, 96-98 (2d Cir. 2011), *aff'd*, 568 U.S. 85,
   133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) ........................................................................ *passim*

*Preiser v. Newkirk*,
   422 U.S. 395, 401-02, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975) .........................................7, 9

*Progressive Apparel Group, Inc. v. Anheuser–Busch, Inc.*,
   No. 95 Civ 2794, 1996 WL 50227, *4 (S.D.N.Y. Feb. 8, 1996) .....................................11, 12

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
556 F.3d 1294, 1297 (Fed. Cir. 2009)..................................................................15

*Starter Corp. v. Converse, Inc.,*
84 F.3d 592, 595-96 (2d Cir.1996) ..................................................................9, 14

*Super Sack Mfg. Corp. v. Chase Packaging Corp.,*
57 F.3d 1054, 1059 (Fed. Cir. 1995)..................................................................8, 9

*Topp-Cola Co. v. Coca-Cola Co.,*
314 F.2d 124, 125-26 (2d Cir. 1963) ..................................................................12

*Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.,*
784 F. Supp. 2d 391, 396-97 (S.D.N.Y. 2011) ...........................................7, 11, 12

**Statutes**

15 U.S.C. § 1119............................................................................................15, 16

28 U.S.C. § 2201..................................................................................................7

Fed. R. Civ. P. 12(b)(1)........................................................................................2

## I.   THERE IS NO DISPUTE ABOUT OFF-WHITE'S USE OF ITS MARKS

Based on the allegations in the Complaint filed by plaintiff Off-White LLC ("Plaintiff") –
or the numerous articles reporting on those allegations – one might conclude that the parties were
engaged in a protracted legal "battle" and that defendant Paige, LLC ("Paige") was attempting to
enjoin or interfere with Plaintiff's use of its three striped design marks.  One, however, would be
wrong.  At no point, either before the filing of the Complaint or after, has Paige alleged (or even
suggested) that Plaintiff's use of its marks infringed Paige's rights.  In fact, as Paige has
repeatedly informed Plaintiff, and as it confirms in a concurrently filed sworn declaration, it does
not object to and will not sue Plaintiff based on any of the uses of Plaintiff's marks of which
Paige is presently aware.  Further, while it has proposed settlement to avoid the potential for
future disputes, Paige has never made any settlement demand that would interfere with or disrupt
the current uses of Plaintiff's marks.  Put simply, there is no dispute.  There is no legal "battle."
There is no case or controversy.  And there is no federal court jurisdiction.

While Paige does not object to any of the uses of Plaintiff's Marks of which it is
presently aware, it is conceivable that Plaintiff could, at some point in the future, use its marks in
a way that would be objectionable to Paige (although, notably, there is no evidence that Plaintiff
has any plans to do so).  For example, Paige would likely object if Plaintiff applied a small
version of one of its marks to the back pocket of jeans.  In the interest of avoiding the potential
for disputes in the future, the parties have been exploring the possibility of entering a settlement
agreement defining certain limitations on the use of Plaintiff's marks.

At least, Paige has been exploring this possibility.  To date, it has made three settlement
proposals, each primarily aimed at prohibiting Plaintiff from using its mark in a small size.
These proposals have not been, as Plaintiff alleges in its Complaint, "over-reaching."  In fact, as

noted above, none of the proposals would interfere with or disrupt Plaintiff's present uses of the marks.  Nonetheless, Plaintiff has either rejected Paige's proposals outright, or offered to refrain only from using the mark on the back pocket of jeans or other bottoms.  From Paige's perspective, however, this proposal is not sufficient.

If Paige's proposals have been "over-reaching," then Plaintiff's responses surely have been "under-reaching."  Regardless, there is no evidence that Plaintiff plans to engage in any use of its Marks to which Paige would object.  Paige would rather live with the hypothetical possibility that Plaintiff's future conduct will give rise to a dispute, than enter into an agreement that does not adequately protect its interests.

Federal courts are prohibited from "advising what the law would be upon a hypothetical state of facts;" their jurisdiction depends on the existence of an actual "case or controversy" that is "definite and concrete."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (2001).  Here, there is none.  Paige has never alleged that any of Plaintiff's current uses of its trademarks infringe any of Paige's rights.  Moreover, Paige has provided a sworn declaration confirming its non-objection to and agreement not to sue based on any of the uses of Plaintiff's marks of which it is presently aware.  To the extent any "case or controversy" ever existed, Paige's covenant not to sue eliminated it.  *E.g.*, *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013).

Any dispute between the parties is purely hypothetical, and the parties' inability to resolve a hypothetical dispute that may arise at some point in the future is not a basis for federal court intervention.  Thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction.

2

## II.    FACTUAL BACKGROUND

Paige owns a number of Nine Stripe design marks, including the one shown in Figure 4, below.  Paige uses its Nine Stripe design marks on apparel, primarily as an identifying mark on the rear pocket of jeans, pants, and other bottoms.  An example of Paige's use of its Nine Stripe design mark is shown in Figure 5, below.



Figure 4



Figure 5

In its Complaint, Plaintiff seeks a declaration that the use of three different trademarks, all in connection with men's and women's apparel, as well as accessories, jewelry, furniture, and other goods, do not infringe Paige's rights in the Nine Stripe design marks.  Plaintiff's marks are the "Vertical Stripe Mark" shown in Figure 1 below, the "Square Stripe Mark" shown in Figure 2 below, and the "Horizontal Stripe Mark" shown in Figure 3 below (collectively, the "Marks").



Figure 1
(Vertical Stripe Mark)



Figure 2
(Square Stripe Mark)



Figure 3
(Horizontal Stripe Mark)

3

In January 2017, Plaintiff's U.S. Trademark Appl. Ser. No. 87/109,889 (the " '889 App.") for the Vertical Stripe Mark was published.  If the Vertical Stripe Mark were used in a manner similar to the manner in which Paige uses the Nine Stripe design marks, *e.g.* by placing a small version of the Vertical Strip Mark on the rear pocket of jeans or other pants, consumers could easily be confused.  Such a use would be covered by a registration issued on the '889 App. For that reason, in response to the publication of the '889 App, Paige sent Plaintiff a letter notifying it of Paige's rights in its various Nine Stripe design marks, and requesting that Plaintiff withdraw the '889 App. and cease use of the Vertical Stripe Mark (the "Demand Letter"). Berman Decl., ¶ 3; Complaint, Exhibit A.

Following transmission of the Demand Letter, the parties' engaged in discussions aimed at resolving the dispute regarding the '889 App.  Lacher Decl., ¶¶ 3-5; Berman Decl., ¶¶ 4-7. Through those discussions, as well as through its own investigation and that of its counsel, Paige obtained information regarding the manner of Plaintiff's current and former uses of its Marks. Lacher Decl., ¶ 5.   An example of Plaintiff's use of the Vertical Stripe Mark is shown in Figure 6, below.



Figure 6

On January 31, 2017, Paige made a settlement proposal that would have prohibited Plaintiff from using the Vertical Stripe Mark in the relatively small size.  Berman Decl., ¶ 5.  The proposed terms would not have interfered with or disrupted any of Plaintiff's Current Actual

4

Uses of the Marks.  *Id.*  Nonetheless, the parties were unable to reach an agreement and, in late February 2017, the parties' settlement discussions stalled.  *Id.* at ¶ 5-8.  Shortly thereafter, on February 28, 2017, U.S. Reg. No. 5150712 (the " '712 Reg.") for the Square Stripe Mark in Classes 18 and 25 issued to Plaintiff.  Because the '712 Reg. covers all potential uses of the Square Stripe Mark, including a very small version of the Square Stripe Mark, Paige is seeking cancellation of the '712 Reg. in an action before the Trademark Trial and Appeal Board (the "TTAB").  Lacher Decl., ¶¶ 9-10.

Paige is presently aware of the following actual uses of the Marks: (a) the uses of the Marks shown in the Complaint; (b) the uses of the Marks identified in Paige's counsel's correspondence with Plaintiff, as shown in Exhibit A to the Lacher Decl.; and (c) the uses of the Marks shown on the website www.off--white.com as of May 11, 2017, as shown in Exhibit B to the Lacher Decl. (collectively, the "Current Actual Uses").  *Id.* at ¶ 5, Exhibits A-B.

Paige has never asserted or alleged that any of the Current Actual Uses of any of Plaintiff's Marks infringe any of its rights.  The Demand Letter did not allege trademark infringement.  Complaint, Exh. A.  It did not allege that any likelihood of confusion is occurring as a result of Plaintiff's use of the Vertical Stripe Mark.  *Id.*  It did not address any particular uses of the Vertical Stripe Mark.  *Id.*  And, it did not address (or even mention) either the Horizontal Stripe Mark or the Square Stripe Mark, or any applications or registrations therefor.  *Id.*

Further, as confirmed in the declaration of its Chief Financial Officer, filed concurrently herewith, Paige does not object to the Current Actual Uses of *any* of the Marks, nor will it object to any past, present, or future uses of any of the Marks on apparel, footwear, accessories, jewelry, or furniture, or tags, hangtags, or labels therefor of which it later becomes aware, provided that in such uses the Marks are used and depicted in substantially the same manner in

which they are used and depicted in the Current Actual Uses, including with respect to size, placement, and orientation (collectively, the "Acceptable Uses").  Lacher Decl., ¶¶ 5-6.  Paige has also unconditionally and permanently renounced and waived its right to claim, demand, commence, cause, or permit to be prosecuted any action, in law or in equity, with respect to the Non-Objectionable Uses.  *Id.*  Paige is unaware of, and Plaintiff has not provided any evidence of, any plans or intention to use the Marks in a manner that is not substantially the same as the manner in which the Marks are used in the Current Actual Uses, including with respect to size, placement, and orientation.  *Id.* at ¶ 8.

For the avoidance of any doubt, Paige does not consent to *all* potential uses of the Marks. *Id.* at ¶ 7.  Paige may, in the future, object to the use of one or more of the Marks if it is used in a manner that is not substantially the same as the manner in which the Marks are used in the Current Actual Uses, including with respect to size, placement, and orientation.  *Id.*  By way of example, and not limitation, Paige would likely object to the use of one or more of the Marks in a small size, particularly, but not exclusively, if such use was made on the back pocket of pants, shorts, skirts, or other bottoms.  *Id.*

After Plaintiff filed the Complaint, it invited Paige to make a further settlement proposal, which Paige did.  Berman Decl., ¶¶ 9-10.  That proposal was initially rejected outright, and then eventually countered with a proposal that was less favorable than the one Plaintiff proposed in response to Paige's original settlement offer.  *Id.* at ¶ 11.  In a further effort to resolve this matter, Paige submitted a third proposal, this time accompanied with a declaration similar to the one submitted herewith, confirming that Paige did not object to and would not object to the Acceptable Uses.  *Id.* at ¶ 12.  Like its two previous proposals, Paige's most recent proposal would not have disrupted or interfered with the Current Actual Uses of the Marks, or any plans

for future use of the Mark of which Paige is aware.  *Id.* at ¶ 5, 10; Lacher Decl., ¶ 9.

Nonetheless, Plaintiff rejected the proposal without discussion or explanation, and, as of the time

of filing, has not made a counteroffer.  Berman Decl., ¶ 13.

### III.   CLAIM I MUST BE DISMISSED; THERE IS NO CASE OR CONTROVERSY

Federal courts are prohibited from rendering advisory opinions; thus, federal court

jurisdiction under both the Declaratory Judgment Act (the "DJA") and Article III of the

Constitution requires a "case or controversy."  *Preiser v. Newkirk*, 422 U.S. 395, 401-02, 95 S.

Ct. 2330, 45 L. Ed. 2d 272 (1975); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27,

127 S.Ct. 764, 770-771, 166 L.Ed. 604 (2007); *Maryland Casualty Co. v. Pacific Coal & Oil*

*Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).  Thus, a party seeking declaratory

relief must show (1) an actual case or controversy that (2) is within federal court subject matter

jurisdiction.  *See* 28 U.S.C. § 2201.

In support of its claim that a case or controversy exists, Plaintiff relies on three things:

(1) Paige's Demand Letter relating to the Vertical Stripe Mark; (2) Paige's "over-reaching

settlement requirements," which, prior to the filing of the Compliant involved only the Vertical

Stripe Mark; and (3) Paige's TTAB action for cancellation of the '712 Reg. for the Square Stripe

mark.  None of the foregoing, whether considered individually or collectively, establish a case or

controversy sufficient to support federal court jurisdiction.

The law, however, is clear that, without more, neither an objection to the federal

registration of a mark, whether asserted in a demand letter or in a proceeding before the

Trademark Office, nor demands made in the context of settlement, satisfy the "case or

controversy" requirement.  *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d

391, 396-97 (S.D.N.Y. 2011) (cease and desist letter and notice of opposition, "accompanied by

settlement negotiations," did not create a case or controversy); *see also* Section III.B.1-2, *infra*. The law is also clear that, to the extent a case or controversy may have existed (and it did not), Paige's covenant not to sue eliminates that controversy and divests the Court of jurisdiction. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (covenant not to sue divested court of jurisdiction); *see also* Section III.A, *infra*.

### A.   If a Case or Controversy Ever Existed (and it Did Not), it Was Eliminated by Paige's Covenant Not to Sue

For various reasons, as discussed in the subsequent Sections, the interactions between Paige and Plaintiff are insufficient to establish any case or controversy as to any of the Marks. Even if, however, the parties' interactions did create a case or controversy, any such controversy is eliminated by Paige's agreement not to sue. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (covenant not to sue divested court of jurisdiction).

Second Circuit law clearly provides that an agreement by a declaratory defendant not to assert an infringement claim can eliminate any controversy or dispute and divests the court of subject matter jurisdiction over declaratory judgment claims for non-infringement. *Id.*[1] This is because federal court jurisdiction "depends on the existence of a case or controversy," and, to support federal jurisdiction "an actual controversy must be extant at *all stages* of the review, not

---

[1] Other courts have reached similar conclusions. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346-49 (Fed. Cir. 2007) (holding that no case or controversy to support declaratory judgment jurisdiction where patent infringement claims were withdrawn and a covenant not to sue was entered); *Crossbow Technology, Inc. v. YH Technology*, No. C03–4360SI, 2007 WL 2408879 at *4-*5 (N.D.Cal. Aug.21, 2007) (holding that a covenant not to sue divested the court of subject matter jurisdiction); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (agreement not to sue divested court of jurisdiction); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999).

merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. at 401-02; *see also Amana Refrigeration, Inc.*, 172 F.3d at 854 (quoting *Preiser*).[2]

An agreement not to sue need not be formal to divest the court of jurisdiction. *Super Sack Mfg. Corp.*, 57 F.3d at 1059 (statement of counsel in motion papers that party would not assert infringement claim divested court of jurisdiction). And, the court in *Amana Refrigeration* specifically found that a declaration by a party representative confirming the party's agreement not to sue eliminated any case or controversy between the parties. *Amana Refrigeration, Inc.*, 172 F.3d at 855. Here, the declaration from Paige's Chief Financial Officer is sufficient to bind Paige and eliminate any existing case or controversy.

In evaluating whether an agreement not to sue eliminates a justiciable case or controversy, the Court should consider at least "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." *Nike, Inc.*, 663 F.3d at 96.

Here, just as in *Nike*, the "language of the Covenant is broad, covering both present and future products." *Compare id.* at 97 *with* Lacher Decl., ¶ 6. As in *Nike*, Paige's agreement "renders the threat of litigation remote or nonexistent even if" Plaintiff continues to engage in all of the Current Actual Uses, as well as any other Acceptable Uses. *Nike, Inc.*, 663 F.3d at 96. There is no evidence that Plaintiff intends to develop new or different uses of its mark that would

---

[2] *Amana* and numerous other decisions relied on herein involve declaratory judgment actions relating to patent rights. Reliance on these decisions is appropriate because "[d]eclaratory judgment actions involving trademarks are analogous to those involving patents . . . and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks." *See Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir.1996).

not be covered by the language of the covenant.  Lacher Decl., ¶ 8.  Thus, as in *Nike*, Paige's

agreement not to sue eliminates any controversy and divests the Court of jurisdiction.  *Nike, Inc.*,

663 F.3d at 97.

This case is easily distinguished from *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*,

in which this Court found that an agreement not to sue did not divest it of jurisdiction.  151 F.

Supp. 3d 451, 457 (S.D.N.Y. 2015).  In *Classic Liquors*, the declaratory defendant stated, in a

letter to plaintiff, "that it had no present intent to sue . . . for trademark infringement."  *Id.*  In

that same letter, however, it reserved the right to sue for trademark infringement "if and when

[plaintiff] launches and has any actual sales."  *Id.* Here, however, like in *Nike* and unlike the

defendant in *Classic Liquors*, Paige has "unconditionally and permanently renounced its right to

claim, demand, or commence, cause or permit to be prosecuted any action in law or in equity

with respect to" any of the Acceptable Uses.  *Compare Nike, Inc.*, 663 F.3d at 96 *with* Lacher

Decl., ¶ 6.

To the extent any case or controversy ever existed (and it did not), it is eliminated by

Paige's agreement not to sue.  Thus, there is no federal subject matter jurisdiction over Claim I

of the Complaint, and it should be dismissed.

**B.**      **No Case or Controversy Ever Existed In the First Place**

If any case or controversy ever existed, it would have been eliminated by Paige's

agreement not to sue.  However, no case or controversy ever existed in the first place.

**1.**      **There Is No Case or Controversy Regarding the Vertical Stripe Mark**

Paige sent the Demand Letter in response to the publication of the '889 App. for the

Vertical Stripe Mark.  Lacher Decl., ¶ 3.  It did not identify any specific uses of the Vertical

Stripe Mark.  Complaint, Exh. A.  It did not allege that Plaintiff's use of the Vertical Stripe Mark

was causing confusion.  *Id.*  It did not allege that Plaintiff's use of the Vertical Striped Mark constituted infringement.  *Id.*  Instead, the purpose of the demand letter was to notify Plaintiff of Paige's rights in the Nine Stripe design marks.  Such letters, even when combined with the filing of a TTAB action and settlement discussions, do not give rise to a case or controversy.  *Vina Casa Tamaya S.A.*, 784 F. Supp. 2d at 396-97 (cease and desist letter and notice of opposition, "accompanied by settlement negotiations" did not create a case or controversy).

Furthermore, at no point during the parties' settlement negotiations (which, prior to the Complaint, were limited to the Vertical Stripe Mark and the '889 App.) did Paige allege (or even suggest) that any of Plaintiff's Current Actual Uses infringed Paige's rights.  And, although Plaintiff has rejected all of Paige's settlement proposals, to the best of Paige's knowledge, *none* of the terms it proposed would disrupt or interfere with *any* of the Current Actual Uses of the Marks.  Berman Decl., ¶¶ 5, 10; Lacher Decl., ¶ 9.  To the extent that Plaintiff believed, as a result of the Demand Letter, that Paige did object to any of Plaintiff's Current Actual Uses, any such belief should have been dispelled by the parties' settlement discussions, during which Paige repeatedly told Plaintiff that it did not object tos the Current Actual Uses. Berman Decl., ¶¶ 5, 9, 12.  In view of the foregoing, Plaintiff's contention that the settlement proposals created a dispute regarding any of its past or present conduct is unsupportable.

Moreover, settlement negotiations do not give rise to federal court jurisdiction over an otherwise non-justiciable controversy, even where a declaratory defendant seeks settlement terms that would place restrictions on the plaintiff's use of its mark.  *Progressive Apparel Group, Inc. v. Anheuser–Busch, Inc.*, No. 95 Civ. 2794, 1996 WL 50227, at *4 (S.D.N.Y. Feb. 8, 1996) ("[s]eeking to obtain a concession in negotiations is a far cry from threatening to bring a coercive lawsuit to obtain the desired result"); *Vina Casa Tamaya S.A.*, 784 F. Supp. 2d at 396 (quoting

*Progressive Apparel*, confirming that this language continues to apply in a "post-*Medimmune* world", and observing that "parties should be encouraged to engage in interest-based negotiation without making a federal case out of it").

Paige has not sought cancellation of any registration for the Vertical Stripe Mark, and its request for cancellation of the '712 Reg. for the Square Stripe Mark cannot properly be considered evidence of a dispute with respect to the Vertical Stripe Mark.  Even if it could, however, the Second Circuit has long-recognized the distinction between objecting to federal registration of a mark and an allegation that a particular use of that mark infringes one's rights, and has further recognized that, objection to registration alone does not create a justiciable case or controversy.  *See Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125-26 (2d Cir. 1963) (finding that an objection to registration does not, without more, create a case or controversy).[3]

As this Court has observed, federal registration is "tantamount to giving plaintiff . . . a 'blank check' to use the mark in whatever potentially infringing way it wished going forward." *Classic Liquors*, 151 F. Supp. 3d at 458.  For this reason, cases in this District have recognized, both pre- and post-*MedImmune*, that there is no case or controversy "where defendants do not object to the plaintiff's current use of its mark, and the only immediate and definite controversy is over the registration of that mark." *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 CIV 7352 JGK, 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010) ("[T]he existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action.").[4]

---

[3] *Cf. National Cable Television v. American Cinema*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("[A]n objection to registration does not legally equate with an objection to use, that is, a charge of infringement.").
[4] *See also Vina Casa Tamaya* , 784 F. Supp. 2d at 396-97 (cease and desist letter and notice of opposition, "accompanied by settlement negotiations" did not create a case or controversy); *Progressive Apparel Group, Inc.* 1996 WL 50227, at *4 (challenging registration of a trademark "does not, without more, create an actual controversy").

Whether considered separately, or together, Paige's Demand Letter, the parties' settlement discussions, and Paige's request for cancellation of the '712 Reg. do not give rise to a case or controversy sufficient to support federal subject matter jurisdiction.

> 2.    **There Is No Case or Controversy Regarding the Square Stripe Mark or the Horizontal Stripe Mark**

With respect to the Square Stripe Mark, Paige has never alleged that its use infringes any of Paige's rights.  In fact, the only action taken by Paige in connection with this Mark is the filing of a petition to cancel the '712 Reg. for the Square Stripe Mark with the TTAB.  Indeed, none of the parties settlement discussions, including those engaged in both before and after the filing of the Complaint, place any restrictions on the use of the Square Stripe Mark or require the inclusion of any limitations in any application or registration therefor.  Berman Decl., ¶ 8.  As discussed in the preceding Section, the initiation of a TTAB action, without more, does not create a justiciable controversy.  *E.g. Bruce Winston Gem Corp.*, 2010 WL 3629592 at *5. ("[T]he existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action.").   In view of the foregoing, there is no justiciable case controversy with respect to the Square Stripe Mark.

The parties' interactions regarding the Horizontal Stripe Mark are even less substantial. Prior to the filing of the Complaint, the parties had *no contact* regarding the Horizontal Stripe Mark.  Paige has never alleged that the use of the Horiztonal Stripe Mark infringes its rights. Thus, there is no justiciable case or controversy regarding the Horizontal Stripe Mark.

In short, there is no federal court jurisdiction where, as here, "defendants do not object to the plaintiff's current use of its mark, and the only immediate and definite controversy is over the registration of that mark." *Bruce Winston Gem Corp.*, 2010 WL 3629592 at *5.

### C.     The Possibility that Paige May Object to Future Uses of Plaintiff's Marks Does Not Create a Justiciable Case or Controversy

Paige does not object to the Current Actual Uses of Plaintiff's Marks, and will not object to any other Acceptable Uses of the Marks.  It is possible, however, that in the future Plaintiff will use one or more of the Marks in a new and different manner to which Paige would object.  There is no evidence, however, that Plaintiff plans to use the Marks in any manner that Paige would find objectionable, or in any manner that is not substantially the same as the manner in which the Marks are used in the Current Actual Uses.

The possibility that Paige may object to some unknown, unspecified, future use of Plaintiff's Marks is insufficient to create a case or controversy.  A justiciable "case or controversy" is one that is "definite and concrete," not "hypothetical or abstract."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (2001).  It follows that a justiciable controversy requires that the declaratory plaintiff be engaged in, or plan to imminently engage in, actual infringing conduct; without such actual or imminently planned conduct, there can be no "case or controversy" for purposes of the either Article III or the DJA. *See id.*; *see also Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-596 (2d Cir.1996) (*per curiam*) (there is no case or controversy where plaintiff lacks both the "definite intent and apparent ability" to engage in some infringing conduct);[5] *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008).

Plaintiff cannot "obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for [trademark] infringement if it were to initiate some

---

[5]  Although the first prong of the test for a case or controversy articulated in *Starter Corp.* was abrogated by *MedImmune*, "the second prong of the *Starter* test [*i.e.* the requirement that declaratory plaintiff have the "definite and apparent ability" to engage in the conduct about which they seek a declaration,] should survive because it is anchored in the requirement of the specificity and immediacy of the dispute which the Court reaffirmed in *MedImmune*. *Bruce Winston Gem Corp.*, 2010 WL 3629592 at *3.

merely contemplated activity." *Cat Tech LLC*, 528 F.3d at 881.  Nor can it use the DJA "to construct the future framework of the interaction between the parties in the absence of a specific dispute about an imminent activity." *Bruce Winston Gem Corp.*, 2010 WL 3629592 at *5. Stated plainly, "an actual controversy cannot be based on a fear of litigation over future products" that neither exist nor are planned.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009); *see also Amana Refrigeration, Inc.*, 172 F.3d at 855.

At present, there are neither allegations nor evidence that Plaintiff intends to use any of its Marks in a manner that is different from the Current Actual Uses.  The possibility that Paige would object to some hypothetical future use made by Plaintiff does not give rise to a justiciable case or controversy.

## IV.   CLAIM II MUST BE DISMISSED; THERE IS NO FEDERAL JURISDICTION OVER CANCELLATION WHERE THERE IS NO ISSUE OF INFRINGEMENT

The Lanham Act (specifically, 15 U.S.C. § 1119), grants federal courts the authority to cancel trademark registrations, but only '[i]n an action involving a registered mark.' " *Nike, Inc.*, 663 F.3d at 98; *see also* 15 U.S.C. § 1119.  "[A] claim for cancellation under § 1119 is insufficient to support federal jurisdiction where a covenant not to sue has resolved the underlying infringement action." *Id.* at  98 (affirming dismissal of cancellation claims and claim for declaration of non-infringement where declaratory defendant agreed not to sue).  Claim II of the Complaint is a claim for cancellation under the Lanham Act, 15 U.S.C. 1119.  Paige has provided a covenant not to sue regarding each of Plaintiff's Current Actual Uses and all past, present, and future uses of Plaintiff's Mark in the same manner as the Current Actual Uses. Lacher Decl., ¶¶ 5-6.  Thus, there is no federal subject matter jurisdiction over Plaintiff's claim for cancellation.

15

Plaintiff titled Claim II of its Complaint a request for a "declaration of invalidity."

Plaintiff also failed, in its Complaint, to cite to 15 U.S.C. § 1119.  Plaintiff may argue that, for

these reasons, its claim is one for declaratory relief, rather than a claim for cancellation, and is

therefore capable of supporting federal jurisdiction.  Any such argument must fail.

Regardless of the title given to Claim II, the remedy sought is cancellation of Paige's

trademark registrations.  Complaint, p. 13.  The Court's authority to cancel a registration derives

from 15 U.S.C. § 1119.  Plaintiff cannot avoid application of controlling Second Circuit

precedent by playing word games or hiding the ball.  The Lanham Act does not provide an

"independent basis for federal jurisdiction" absent an infringement dispute.  *Nike, Inc.*, 663 F.3d

at 98.  As discussed in Section III, *supra*, here there is no infringement dispute.  It follows that

there is no basis for federal jurisdiction over Claim II for cancellation of Paige's trademark

registrations, and that claim must be dismissed.

## V.   PLAINTIFF'S REQUEST FOR A DECLARATION REGARDING ITS REGISTRATIONS AND APPLICATIONS SHOULD BE STRICKEN

In its prayer for relief, Plaintiff seeks a declaration "that the Off-White Diagonal Mark

Registration and Off-White Diagonal Mark Applications are valid, enforceable and should not be

cancelled or opposed."  Complaint, p. 13.  For the same reasons discussed in Section IV, *supra*,

the Court lacks subject matter jurisdiction over this request.

Furthermore, federal district courts lack "authority to direct [the Trademark Office] to

grant to or deny the pending applications."  *Johnny Blastoff, Inc. v. Los Angeles Rams Football

Co.*, 1998 WL 766703 at *12, 48 U.S.P.Q.2d 1385 (W.D. Wis. 1998) (refusing to direct

Trademark Office regarding how to dispose of opposition proceedings).  Such decisions are

appropriately made, in the first instance, by the Trademark Office or the TTAB.  *See id.*  The

LA 33550887v3

only cases in which a federal court is authorized to make a determination in the first instance are those that are "tied directly . . . to a claim of infringement based on an existing registration."  *Id.*

Furthermore, even if the Court had both the jurisdiction and the authority to grant this request (and it does not), doing so would be clearly erroneous.  As this Court has recognized, even where there is no objection to the current use of a mark, registration of a mark may still be objectionable as it "would be tantamount to giving plaintiff . . . a 'blank check' to use the mark in whatever potentially infringing way it wished going forward."  *Classic Liquors*, 151 F. Supp. 3d at 458.

Thus, in the event the Court denies Paige's motion to dismiss, it should, at a minimum, strike this request from the Complaint.

///

///

///

///

///

///

///

17

VI.     **CONCLUSION**

For the reasons stated herein, the Court lacks subject matter jurisdiction over each of

Plaintiff's claims asserted in the Complaint, and the Complaint should be dismissed in its

entirety.

Dated: New York, New York
       June 13, 2017

**PRYOR CASHMAN LLP**


By:      /s/ Andrew S. Langsam
         Andrew S. Langsam
         Danielle Tepper
7 Times Square
New York, New York  10036
(212) 421-4100
alangsam@pryorcashman.com
dtepper@pryorcashman.com

**JEFFER MANGELS BUTLER &
MITCHELL LLP**


By:      /s/ Rod. S. Berman
         Rod S. Berman
         Jessica Bromall Sparkman
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
(310) 203-8080
rberman@jmbm.com
jbromall@jmbm.com

*Attorneys for Defendant
Paige, LLC*

18